United States Court of Appeals,

Eleventh Circuit.

No. 96-6211.

John Wayne HOLSOMBACK, Petitioner-Appellant,

v.

J.D. WHITE, Warden, Attorney General of the State of Alabama, Respondents-Appellees.

Jan. 26, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-94-PT-3137-S), Robert B. Propst, District Judge.

Before COX and BARKETT, Circuit Judges, and HUNT[*], District Judge.

BARKETT, Circuit Judge:

John Wayne Holsomback, an Alabama prisoner, appeals from the district court's dismissal of his *pro se* habeas petition filed pursuant to 28 U.S.C. § 2254. Holsomback was convicted of first-degree sodomy by an Alabama state court and received a 25-year sentence. The prosecution's case consisted entirely of the testimony of Holsomback's ten-year-old son, Jeffrey. Jeffrey testified that from the time of his parents' divorce in 1982, when he was four years old, until November 1987, his father had regularly subjected him to anal intercourse during their biweekly weekend visitations. (*See* R.1-7, Ex. A at 58-61).[1] Jeffrey also testified that his father had assaulted him on other occasions, once putting an unloaded gun to his neck and pulling the trigger, twice subjecting him to oral sex, and more than once subjecting him to anal intercourse with another man. (*See* R.1-7,

[*]Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

[1]Unless otherwise specified, page numbers within citations to R.1-7, Ex. A, the record in Holsomback's direct appeal, refer to the transcript of Holsomback's trial.

Ex. A at 64-67). Although Jeffrey had been examined by a doctor for signs of sexual abuse approximately twelve days after telling his mother about the sodomy, (*see* R.1-7, Ex. F at 26-27), the prosecution's case included no medical evidence in support of Jeffrey's allegations. In fact, the prosecutor had advised Holsomback's attorney prior to trial that there was no medical evidence of sexual abuse. (*See* R.1-7, Ex. C at 8-9).

On cross-examination, Jeffrey was asked about several inconsistencies between his trial testimony and his prior testimony in a civil proceeding instituted by Holsomback to enforce visitation. Jeffrey responded to all of these inconsistencies by stating that he did not remember what he had said previously. (*See* R.1-7, Ex. A at 89-100).

Holsomback's conviction was affirmed on direct appeal, and his petition for certiorari to the Alabama Supreme Court was denied. He subsequently filed three state petitions for post-conviction relief. The state court held evidentiary hearings on claims raised in the first two petitions but ultimately denied all three petitions. Proceeding *pro se,* Holsomback then filed a federal habeas petition in the United States District Court for the Northern District of Alabama. Upon the magistrate judge's recommendation, the district court dismissed Holsomback's petition.

On appeal, Holsomback asserts the following claims: (1) the state's failure to disclose certain medical records in its possession violated Holsomback's right to due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) the trial court erred in not requiring the prosecutor to elect the particular incident of sodomy for which conviction was sought; (3) his sentence was based on uncharged allegations of sodomy and therefore violated Holsomback's right to due process; (4) the trial court's failure to give a clarifying instruction permitted the jury to consider uncharged allegations of sodomy; (5) the trial court's instructions as to "reasonable doubt" were constitutionally deficient; (6) newly discovered evidence suggesting that the alleged victim

had a psychological condition that would cause him to fabricate sexual abuse charges warrants a new trial or other relief; (7) the evidence presented at trial was insufficient to support Holsomback's conviction; (8) the evidence presented at trial was equally consistent with Holsomback's innocence as with his guilt; (9) the trial court erred in failing to instruct the jury *sua sponte* on the lesser included offenses of sexual abuse and assault; and (10) Holsomback was denied the effective assistance of both his trial and appellate counsel.

We find no merit in these claims with the exception of the last one. Because we find that Holsomback was denied the effective assistance of trial counsel, we REVERSE and REMAND.

## BACKGROUND

The only evidence presented at trial on the ultimate question of whether Holsomback had sexually abused his son was Holsomback's and Jeffrey's conflicting testimony on that issue.[2] Although Holsomback had also urged his trial counsel to call his and Jeffrey's family physician, Dr. Thomas Nolen, counsel neither interviewed Dr. Nolen nor called him as a witness. (*See* R.1-7, Ex. C at 13, 27, 34). In addition, although counsel was aware that Jeffrey had been examined for signs of sexual abuse prior to trial and that there was no medical evidence that Jeffrey had been abused

---

[2]Holsomback's trial counsel called a total of six witnesses in addition to Holsomback: Holsomback's mother, his sister, his brother, his niece, and two pastors of churches Holsomback attended. Holsomback's mother testified regarding the hostile relationship that had existed since the divorce between Holsomback and his family, and Holsomback's wife and her mother. (*See* R.1-7, Ex. A at 142-44). She also testified that Jeffrey visited her regularly and that she had seen neither physical evidence of abuse while bathing Jeffrey nor any changes in his attitude toward his father over the years. (*See* R.1-7, Ex. A at 146-47, 153-54, 160, 172). Holsomback's sister and brother testified that they had in the past, and would in the future, let their sons stay overnight with Holsomback. (*See* R.1-7, Ex. A at 181-83, 192). Holsomback's niece related a telephone conversation between Jeffrey and his mother and maternal grandmother in which Jeffrey had responded negatively to inquiries as to whether anyone in his father's family had tried to "do anything" to him during a scheduled visitation one Christmas. (*See* R.1-7, Ex. A at 185-89). Finally, the two pastors testified that Holsomback's reputation in the community for truth and veracity was good. (*See* R.1-7, Ex. A at 196, 202).

anally, counsel made no effort to interview Dr. Williams, the physician who had examined Jeffrey, or to obtain the medical records from Dr. Williams's examination. (*See* R.1-7, Ex. C at 8-11).

At trial, the prosecutor made reference to the lack of any medical evidence to substantiate Jeffrey's allegations both during jury selection and in his opening argument,[3] (*see* R.1-7, Ex. A at 25, Ex. C at 8-9); however, Holsomback's attorney presented no medical testimony or other evidence concerning the lack of corroborating physical evidence in the case. Indeed, it appears from the record that defense counsel's sole reference to the lack of medical evidence—apart from his objection to the prosecutor's opening argument—was counsel's attempt during closing argument to explain the absence of any testimony on that issue, stating "[a]nd you as sensible people know that the reason the doctor wasn't here was because there was no evidence [Jeffrey had] ever been touched or molested or abused. Am I right, that that's what you think?" (R.1-7, Ex. A at 229). The prosecutor responded to counsel's statement in his own closing argument, asking the jury, "[d]o you think that if that doctor could say for sure that that didn't happen, that the defense wouldn't have him up here saying, "I examined this child, and I can conclusively tell you that nobody handled' ... [objection by defense counsel]."[4]

## DISCUSSION

Ineffective assistance of counsel is a mixed question of fact and law subject to *de novo* review. *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir.1989). To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was

---

[3]During his opening argument, the prosecutor made the following statement, over defense counsel's objection: "I expect that Jeffrey will say that this went on year after year, which I expect partly explains the lack of medical evidence." (R.1-7, Ex. A at 25).

[4]We note that the transcript of Holsomback's trial includes only those portions of the attorneys' questioning during voir dire and opening and closing arguments to which an objection was made.

deficient, and (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In determining whether counsel's performance was deficient, we consider the reasonableness of the challenged conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066. A deficiency is prejudicial where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

In his federal habeas petition and initial appellate brief, both filed *pro se,*[5] Holsomback challenges the adequacy of his trial counsel's investigation into the conceded lack of medical evidence that any sexual abuse had occurred, asserting as deficiencies in counsel's performance his failure to interview and call as witnesses Doctors Nolen and Williams, (*see* R.1-1 at 60-61, 87; Appellant's Pro Se Br. at 38-40), and his failure to obtain and utilize at trial the medical report prepared by Dr. Williams, (*see* R.1-1 at 60, 89; Appellant's Pro Se Br. at 40).[6] As this court has repeatedly observed, "[i]t is well established that the standards governing the sufficiency of habeas

[5]Although Holsomback filed both his federal habeas petition and his initial brief on appeal *pro se,* counsel was eventually appointed for Holsomback sometime after the state filed its initial brief in this case. Counsel subsequently filed an additional brief on Holsomback's behalf, supplementing Holsomback's arguments as to his ineffective assistance and *Brady* claims.

[6]Holsomback did not specifically mention counsel's failure to speak with Dr. Williams in the section of his *pro se* habeas petition captioned "Petitioner Contends His Fifth Meritorious Issue Ineffective assistance of Trial Counsel and Appellate Counsel." Because Holsomback clearly addressed this deficiency in recounting the procedural history of the case, (*see* R.1-1 at 60-61), however, we interpret his petition to include this allegation. *See Golden v. Newsome,* 755 F.2d 1478, 1480 n. 4 (11th Cir.1985) (construing appellant's *pro se* habeas petition to include an allegation not expressly raised therein, but raised in appellant's accompanying brief); *Dickson v. Wainwright,* 683 F.2d 348, 351-52 & n. 5 (11th Cir.1982) (construing appellant's *pro se* habeas petition in light of state post-conviction record).

corpus petitions are less stringent when the petition is drafted *pro se* and without the aid of counsel."

*Williams v. Griswald,* 743 F.2d 1533, 1542 (11th Cir.1984). *See also Gunn v. Newsome,* 881 F.2d 949, 961 (11th Cir.1989) ("[W]e have never wavered from the rule that courts should construe a habeas petition filed *pro se* more liberally than one drawn up by an attorney."). The district court interpreted the relevant portions of Holsomback's ineffective assistance claim[7] to include only the specific allegations that trial counsel was ineffective because he "failed to call Dr. Nolen to testify that there was no medical evidence of physical abuse, ... [and] failed to investigate and obtain medical records." (R.2-20 at 29). We find, however, that, given the liberal construction to which *pro se* pleadings are entitled, Holsomback's pleadings can fairly be read to assert a broader claim. In addition to challenging his attorney's failure to contact the particular physicians and to obtain the particular medical records noted, Holsomback made the more general allegations that counsel "failed to conduct a reasonable investigation into the facts where he did not ... talk with any of the physicians in order to verify information given to him by the prosecutor regarding the medical evidence," (Appellant's Pro Se Br. at 39-40), and that "[d]uring the pretrial discovery and preparation defense counsel ... failed to investigate witnesses and facts if where [sic] presented would have change[d] the outcome of the entire trial," (R.1-1 at 87). These allegations can be fairly interpreted to encompass his trial counsel's failure to conduct any investigation into the conceded lack of medical evidence, including his failure to consult with any physicians concerning the significance of the lack of medical evidence in the case.

The district court rejected this claim, finding, as had the Alabama state courts, that counsel's

---

[7]Holsomback asserts numerous other deficiencies in his trial counsel's performance. Because we conclude that Holsomback's additional ineffective assistance claims lack merit, however, we address only those arguments that relate to counsel's failure to pursue testimony from physicians or other medical evidence suggesting that Jeffrey's allegations of sexual abuse were not credible.

failure to interview Dr. Nolen and other witnesses and to obtain medical records "were all tactical decisions ... based on [counsel's] professional judgment of how best to present petitioner's defense." (R.2-20 at 29-30). Whether a particular decision by counsel was a tactical one is a question of fact, and the state court's resolution of that issue enjoys a strong presumption of correctness. *See Jackson v. Herring,* 42 F.3d 1350, 1367 (11th Cir.1995); *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir.1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, reviewable *de novo. See Jackson,* 42 F.3d at 1367; *Horton,* 941 F.2d at 1462. Moreover, as the Supreme Court observed in *Strickland:*

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.* In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91, 104 S.Ct. at 2066-67 (emphasis added).

We cannot say that, under the circumstances of this case, the decision by Holsomback's trial counsel not to conduct any investigation into the conceded lack of medical evidence of sexual abuse was reasonable. Although Holsomback had been accused of sodomizing his son repeatedly over a period of several years beginning when Jeffrey was only four years old and continuing until he was nine, a rectal examination performed shortly after the last alleged incident of sodomy found no medical evidence of sexual abuse. Despite this apparent inconsistency, however, counsel consulted no physician in order to ascertain the significance of the lack of medical evidence. Moreover, at the evidentiary hearing held on Holsomback's first state post-conviction petition, Holsomback's trial counsel recalled that his theory of the case was, simply, that "the child was not telling the truth. ... It was a question of a one-on-one case." (R.1-7, Ex. C at 8). Yet despite the fact that counsel

himself viewed the case essentially as a swearing match, turning entirely on whether the "jury believe[d] the child," (R.1-7, Ex. C at 31), he made no effort to support Holsomback's claim of innocence with disinterested medical testimony or other medical evidence suggesting that Jeffrey's allegations were not credible. In particular, counsel declined to contact either the physician who had examined Jeffrey shortly after the last alleged incident of sodomy or Jeffrey's family physician during the period of the alleged sexual abuse, both of whom were readily identifiable to him as potential sources of such disinterested testimony. Likewise, counsel made no effort to obtain the records from Jeffrey's medical examination.

At the evidentiary hearing, Holsomback's trial attorney justified his decisions not to contact the physicians and not to subpoena the medical records based on his view that there was nothing to be gained from this line of investigation in light of the prosecutor's concession that there was no medical evidence to substantiate the allegations of sexual abuse. (*See* R.1-7, Ex. C at 8-9, Ex. F at 23). In particular, as to his decision not to interview Dr. Williams, counsel explained that although he had anticipated that, if called as a witness, Dr. Williams would have affirmed the lack of physical evidence, (*see* R.1-7, Ex. C at 10-11), he elected not to contact him because

> [i]f I put him on the stand, I'm bound by what he says. On cross examination, if ... whoever was cross-examining him got him to weasel even a small bit on that element, I would have had to live with it. Since we already had as a matter of fact that there was no medical evidence the child was abused, I did not—it was a judgment call—I didn't feel it would be advisable to run that risk for what potential benefit might come from it.

(R.1-7, Ex. C at 9-10). Counsel further explained that he did not subpoena Dr. Williams's medical report because "under a mutual discovery, if there was some medical evidence there and there was something in there that might have been harmful to [Holsomback] and we got it, then they could have used it, if we'd put him on." (R.1-7, Ex. C at 11). Finally, while counsel never directly addressed his rationale for not contacting Dr. Nolen, it appears from the record that counsel

preferred simply to rely on the prosecutor's references to the lack of physical evidence as the sole source of information on the subject. In response to questioning concerning how Nolen's testimony might have helped Holsomback's case, however, counsel conceded that "in view of the jury verdict, in retrospect it might have been advisable to [call the doctor]."[8] (R.1-7, Ex. C at 13).

We find counsel's justifications unpersuasive under the circumstances of this case. Had counsel interviewed the doctors, a subsequent tactical decision not to call them might have fallen well within "the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Having conducted no investigation into the significance of the lack of medical evidence that Jeffrey had been sexually abused, however, Holsomback's counsel could not have made an informed tactical decision that the risk that the doctors might equivocate on the stand outweighed "what potential benefit might come from [their testimony]." (R.1-7, Ex. C at 10). Because counsel never actually spoke with the physicians, he remained entirely unaware—apart from his speculation that, at best, Dr. Williams would merely corroborate the lack of medical evidence—of whether and to what extent their testimony might have helped Holsomback's case. In these circumstances, we cannot say that counsel's decision not even to contact the physicians as part of his pre-trial investigation was professionally reasonable. Nor can we say that counsel's tactical decision not to pursue the medical report from Dr. Williams's examination was reasonable. Counsel justified his failure to subpoena the report based on his fear that the report might contain material harmful to Holsomback's defense which the state would be able to use against him were counsel to obtain the report. Because the report was already in the state's possession, (*see* R.1-7, Ex. F at 22-23), however, an effort by counsel to obtain the report could have had no effect on the state's ability

---

[8]As discussed more fully *infra,* Dr. Nolen testified at the evidentiary hearing held on Holsomback's second state post-conviction petition that, in his opinion, Jeffrey's account of the sexual abuse was not medically possible.

to use it against Holsomback. Counsel's asserted fear was thus plainly unreasonable.

Moreover, based on Dr. Nolen's testimony at the evidentiary hearings held on Holsomback's first two state post-conviction petitions, we are also persuaded that counsel's failure to conduct an adequate pre-trial investigation satisfies the prejudice prong of *Strickland.* Holsomback's own attorney characterized the proceeding as a "one-on-one case" in which the verdict would turn on whose account the jury believed. Noting our agreement with counsel's characterization, we cannot say that medical testimony or other medical evidence calling into question Jeffrey's account of the abuse would not have made a difference in the outcome at trial.

As of the time of the second evidentiary hearing, Dr. Nolen had been a practitioner of family medicine, treating both children and adults, for eighteen years. (*See* R.1-7, Ex. F at 11-12). At the second hearing, Dr. Nolen was qualified as an expert in family medicine and all the areas it encompasses. (*See* R.1-7, Ex. F at 17). Dr. Nolen's testimony at the hearings established that both Holsomback and Jeffrey had been patients of his, Holsomback since the inception of Dr. Nolen's practice and Jeffrey since the age of one or two, (*see* R.1-7, Ex. C at 48, Ex. F at 15, 18); that he had occasion to examine Jeffrey approximately two to three times a year, (*see* R.1-7, Ex. C at 51-52); and that, in his examinations, he never saw any signs of sexual abuse, nor did Jeffrey exhibit the behavior patterns of a child who had been sodomized, (*see* R.1-7, Ex. C at 48, Ex. F at 40). He also stated that Holsomback did not exhibit the characteristics of a pedophile. (*See* R.1-7, Ex. C at 56). While Dr. Nolen had not himself been asked to examine Jeffrey "on the question of sodomy," (R.1-7, Ex. C at 49), based on his review of both the medical report prepared by Dr. Williams and a transcript of Jeffrey's trial testimony, he expressed the opinion that Jeffrey's account of the sexual abuse was medically impossible. (*See* R.1-7, Ex. F at 19-20, 24, 28-29). Specifically, Dr. Nolen testified that certain physical evidence of trauma to the anal area would be apparent to a doctor

performing a rectal examination on a child who had been sodomized once within the previous ten days to two weeks or four times within the previous year. (*See* R.1-7, Ex. F at 24-26). Although Dr. Williams had examined Jeffrey approximately twelve days after the last alleged incident of sodomy, the medical report from that examination revealed no evidence of trauma or penetration of the anus. (*See* R.1-7, Ex. F at 26-28). Therefore, Dr. Nolen concluded that Jeffrey had not been subjected to anal intercourse twelve days prior to the rectal examination.[9] (*See* R.1-7, Ex. F at 28).

The dissent suggests that Dr. Nolen's testimony would not likely have been significant given that Nolen himself never examined Jeffrey for signs of sexual abuse and appeared to have had little prior experience handling child abuse cases. However, in addition to testifying in his capacity as Jeffrey's treating physician since the age of one or two and on the basis of those occasions on which he personally had examined Jeffrey, Dr. Nolen also testified based upon his review of the medical report from Dr. Williams's rectal examination of Jeffrey and of Jeffrey's trial testimony. The dissent also suggests that the medical report prepared by Dr. Williams would not likely have been helpful to Holsomback's defense in light of the fact that the report included a final diagnosis of "sexual abuse." We recognize that, had Holsomback's counsel consulted with medical personnel or otherwise investigated the medical aspect of the case, Dr. Nolen might not himself have been called as a witness, and the medical report might not have been introduced. In light of Dr. Nolen's testimony, however, we are persuaded that, under the specific circumstances of this case, Holsomback's defense was sufficiently prejudiced by his attorney's failure to conduct an adequate pre-trial investigation that our confidence in the trial outcome is undermined.

For all of the foregoing reasons we REVERSE and REMAND with instructions to grant the

---

[9]On cross examination, Dr. Nolen conceded that, if lubrication were used, a penis could be inserted into the anus without creating signs of penetration "on maybe one occasion," but not on multiple occasions, even over a period of a few months. (*See* R.1-7, Ex. F at 33-34).

writ of habeas corpus.

COX, Circuit Judge, dissenting:

I respectfully dissent from the holding that Holsomback was denied the effective assistance of trial counsel. Holsomback's claim does not satisfy either prong of the *Strickland* test; he did not make the requisite showing either (1) that counsel's performance was deficient, or (2) that the deficient performance prejudiced the defendant. I would accordingly affirm the decision of the district court.

The relevant portion of Holsomback's claim, as framed by the district court, was that he "received ineffective assistance of trial counsel because his attorney (a) failed to call Dr. Nolen to testify that there was no medical evidence of physical abuse, ... [and] (e) failed to investigate and obtain medical records, school records, and counselor's records." (R.2-20 at 11-12).[1]

As to the first prong of the *Strickland* test, the district court agreed with the state court's finding that counsel's decision not to obtain medical records was a reasonable tactical decision. (R.2-20 at 29). I agree. At the evidentiary hearing held on Holsomback's first state post-conviction petition, Holsomback's trial counsel testified that he did not subpoena medical records because the prosecutor told the jury that there was no medical evidence that the child had been sexually abused and because trial counsel had been told there was no physical medical evidence that the child had

---

[1] The majority interprets Holsomback's claim to include, in addition to the claim that counsel failed to contact this particular physician and failed to obtain particular medical records, the claim that counsel failed "to conduct any investigation into the conceded lack of medical evidence, including his failure to consult with any physicians concerning the significance of the lack of medical evidence in the case." Holsomback's claim, as framed by the district court, is narrower than the claim framed by the majority.

The evidence is in and the case is closed. If the majority concludes that the district court mischaracterized the claim, what it should do is vacate the district court's judgment and remand for further proceedings. Instead, the majority enters its own findings of fact and conclusions of law on the recharacterized claim.

been abused. (R.1-7-Ex.C at 8-9, 12).

The district court also agreed with the state court's finding that counsel's decision not to call Dr. Nolen to testify was a reasonable tactical decision. Counsel testified that had he called a doctor to testify, he ran the risk of the doctor wavering in his testimony. (R.1-7-Ex.C at 9-10). Further, there is no indication from the record that counsel should have been aware of the substance of the testimony Dr. Nolen later said he would have given—that it was "medically impossible" for repeated acts of abuse to have occurred without physical signs of abuse. (R.1-7-Ex.F at 24-29). Dr. Nolen never examined Jeffrey Holsomback for signs of abuse and did not treat him during the relevant time period. (R.1-7-Ex.C at 49, 54-55). This court has held that strategic or tactical decisions amount to ineffective assistance of counsel only if they are so plainly unreasonable that no competent attorney would have chosen them. *See Kelly v. United States,* 820 F.2d 1173, 1176 (11th Cir.1987); *see also Smith v. Dugger,* 840 F.2d 787, 795 (11th Cir.1988) (noting that counsel's decision not to present certain evidence or to choose a certain defense because of a strategic or tactical decision is afforded a strong presumption of correctness that is "virtually unchallengeable"). I cannot say, on this record, that trial counsel's tactical decisions were unreasonable.

I am also not convinced that counsel's decisions prejudiced Holsomback. At the evidentiary hearing held on Holsomback's first post-conviction petition, Dr. Nolen testified that he saw Jeffrey Holsomback several months after the alleged abuse occurred, but that he did not perform any tests or any examination to rule out the possibility of abuse. (R.1-7-Ex.C at 49). When asked again whether he examined the child for sexual abuse, Dr. Nolen stated that he "never saw him at a point in time after it had happened or in the time frame where it would have really been relevant" and that he was under the impression that an evaluation as to alleged sexual abuse "was being handled elsewhere." (R.1-7-Ex.C at 54-55). Further, Dr. Nolen testified that when he was in medical school,

child abuse cases were usually handled by pediatric residents and that if a child who allegedly had been abused were to visit his office, he would refer the case to the Children's Hospital for further evaluation. (R.1-7-Ex.C at 53-54). In light of all of this testimony, I am not convinced that Dr. Nolen's testimony would have been significant.

Likewise, I cannot say that the use of Jeffrey Holsomback's medical records, and specifically the report from the examination conducted by Dr. Williams, would have been helpful. While the record does indicate that there were no signs of tears or trauma to the victim's anus or rectum, the final diagnosis by Dr. Williams was "sexual abuse." (R.1-1). The use of the medical records with a diagnosis of "sexual abuse" could have been more harmful than helpful to Holsomback's case.

I agree with the district court's conclusion that Holsomback failed to demonstrate that he was prejudiced by counsel's performance. I would affirm the decision of the district court.