NOTICE

Decision filed 03/18/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230087-U

NO. 5-23-0087

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | De Witt County. |
| | ) | |
| v. | ) | No. 12-CF-95 |
| | ) | |
| DUANE T. THACKREY, | ) | Honorable |
| | ) | Gary A. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly denied defendant's postconviction petition where his allegations of ineffective assistance of counsel were either speculative or contradicted by the record; the court did not err in allowing defendant to waive counsel where the record showed the decision was clear, unequivocal, knowing, and intelligent. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Duane T. Thackrey, appeals the circuit court's order denying his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the court erred. Accordingly, it has filed a motion for leave to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and after this court provided him with an opportunity to respond, he has done so. However, after

1

considering the record on appeal, OSAD's motion and supporting brief, and defendant's response, we agree that this appeal presents no reasonably meritorious issues. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                          BACKGROUND

¶ 4      One day in July 2012, defendant's wife, Janice Johnson, saw defendant kissing A.B., the 15-year-old daughter of a friend who was staying with the couple. Within a month, defendant moved out of the home and Johnson filed for a dissolution of their marriage.

¶ 5      Sometime later, D.D., Johnson's 10-year-old daughter from a previous marriage, revealed that defendant had touched her "too many times to count." A few days later, D.D. was interviewed at the Child Advocacy Center (CAC). D.D. told the interviewer that defendant penetrated her vagina with his fingers, penis, and chin, and penetrated her anus with his penis. When asked why she felt safe reporting these incidents, she replied "because he is not in my life anymore."

¶ 6      The State charged defendant with five counts of predatory criminal sexual assault of a child as well as aggravated criminal sexual abuse. The trial court allowed the State to call A.B. to testify about the kissing incident as evidence of defendant's propensity to commit sexual offenses. See 725 ILCS 5/115-7.3 (West 2010). The defense, in turn, sought to introduce evidence that D.D. had previously accused her half-brother of sexually assaulting her. Defense counsel argued that this was particularly significant given that the accusation occurred during the "exact same time frame" as defendant's alleged conduct and, although D.D. was "examined by the medical people," apparently "nothing abnormal was found." The court nevertheless denied the motion pursuant to the rape shield law. See *id.* § 115-7(a).

¶ 7      The case was called for trial. After jury selection, the prosecutor gave his opening statement. Defense counsel asked to defer his opening statement until the following day. The court responded, "Go ahead and we'll hear it now so the jury will have it in context." Counsel responded,

"All right. We can do that too," and proceeded to give his opening statement. He argued that, in addition to the six family members, the house was occupied by additional family and friends such that it would have been virtually impossible for defendant to have been alone with D.D. as often as she claimed.

¶ 8     A.B. testified about the kissing incident with defendant. She said that, after about a month of flirting, she and defendant "made out for a little bit" one night, during which time he digitally penetrated her vagina. She acknowledged that she had not mentioned the digital penetration in a CAC interview, explaining that she "didn't feel comfortable talking about it."

¶ 9     D.D. testified consistently with her CAC interview. D.D.'s older brother, K.J., testified to instances in which D.D. and defendant were locked in defendant's bedroom while K.J. and his other siblings were sent outside to do chores.

¶ 10    The defense called eight of defendant's friends and family members. Most had lived in the house at some point, but none had noticed anything unusual about the interactions between defendant and D.D.

¶ 11    Defendant did not appear for closing arguments on the fourth day of trial. Following two days of delays, defense counsel moved for a mistrial. He claimed that he had only just learned that D.D.'s three siblings were also interviewed at the CAC, claiming the State failed to disclose the other interviews during discovery. The prosecutor pointed out that a police report tendered to the defense referred to the three children being interviewed. The trial court denied the motion for mistrial but allowed defense counsel the chance to watch the additional interviews. The court expressed its opinion that introducing the siblings' CAC interviews would have hurt the defense rather than helped it.

¶ 12    Following the recess, the trial continued in defendant's absence. At the conclusion of his argument, the prosecutor said, "And if you want to look any further [for] evidence of [defendant's] consciousness of guilt, you have no further to look than that empty chair right there."

¶ 13    The jury found defendant guilty on all counts. The court imposed consecutive sentences totaling 85 years. On direct appeal, defendant contended that his sentence was excessive. The Fourth District disagreed and affirmed. *People v. Thackrey*, 2017 IL App (4th) 4140516-U.

¶ 14    Defendant then filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). After protracted proceedings during which defendant was represented by three different appointed attorneys, and which included another appeal, defendant elected to proceed *pro se*.

¶ 15    Defendant filed a *pro se* supplemental amended postconviction petition. He alleged that trial counsel was ineffective where he (1) failed to investigate D.D.'s medical records, which purportedly contained evidence that she had not been sexually assaulted; (2) failed to object to the admission of A.B.'s testimony as propensity evidence; (3) failed to show that A.B.'s trial testimony was perjured by introducing her CAC interview, which allegedly contradicted her trial testimony; (4) failed to object to the prosecutor's argument that defendant's absence was an admission of guilt; and (5) failed to obtain and view the victim's siblings' CAC interviews prior to trial. Defendant further argued that the cumulative effect of trial counsel's failures prejudiced him. He also argued that appellate counsel was ineffective for failing to raise some of those issues on direct appeal.

¶ 16    The court allowed defendant to proceed *pro se* and he confirmed that he wanted to proceed only on his most recently filed petition. The court denied a State motion to dismiss and scheduled a third-stage hearing. However, neither party presented evidence and defendant waived argument. The court denied the petition, and defendant timely appealed.

4

¶ 18    OSAD concludes that there is no good-faith argument that the trial court erred in denying defendant's petition, as none of his claims of ineffective assistance of trial or appellate counsel was meritorious. It further concludes that there is no nonfrivolous argument that the court erred in allowing defendant to waive counsel during the postconviction proceedings. We agree.

¶ 19    The Act provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a) (West 2020); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The purpose of such a proceeding is to permit inquiry into constitutional issues involved in the original conviction that were not, and could not have been, adjudicated on direct appeal. *People v. Harris*, 206 Ill. 2d 1, 12 (2002). Thus, issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal but were not forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). A petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and must "have attached thereto affidavits, records or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022).

¶ 20    Defendant's petition raised five distinct allegations of ineffective assistance of counsel. " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). A defendant claiming that counsel was ineffective must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy and not of incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998).

¶ 21    Defendant first claims that counsel was ineffective for failing to investigate and present evidence of a lack of medical evidence to corroborate D.D.'s claims of sexual assault. Generally,

decisions about which witnesses to call and what evidence to present are matters of trial strategy. *People v. Leeper*, 317 Ill. App. 3d 475, 483 (2000) (citing *People v. Madej*, 177 Ill. 2d 116, 148 (1997)).

¶ 22    Of course, we may not blindly assume that because an attorney failed to present particular evidence, he or she made a strategic decision not to do so. A defendant can overcome the presumption by showing that counsel failed to discover the evidence before trial, often labeled a failure to investigate. A lawyer cannot make a strategic decision about evidence of which he is unaware. See *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984) ("strategic choices *made after thorough investigation* of law and facts relevant to plausible options are virtually unchallengeable" (emphasis added)).

¶ 23    On the other hand, a claim of "failure to investigate" is potentially open-ended: virtually any defendant could plausibly claim that a more extensive investigation by defense counsel might have disclosed something useful. To balance these sometimes-competing interests, courts require a defendant claiming a failure to investigate to be fairly specific both with regard to counsel's failure to investigate and what the hypothetical investigation could have revealed. A "defendant cannot rely on speculation or conjecture to justify his claim of incompetent representation." (Internal quotation marks omitted.) *People v. Clarke*, 391 Ill. App. 3d 596, 614 (2009) (quoting *People v. Deleon*, 227 Ill. 2d 322, 337 (2008)).

¶ 24    In *People v. Knowles*, 2019 IL App (3d) 180190, the defendant asserted that counsel was ineffective for failing to investigate a police tip that allegedly led to a search of his home. The court rejected this claim, noting that the defendant presented no evidence that there even was a tip, relying only on speculation that there must have been a tip to alert the police to defendant and his home. The court found this to be pure speculation. *Id.* ¶ 31. In *People v. Cooper*, 2013 IL App (1st) 113030, ¶ 58, the court rejected various speculative reasons that the defendant claimed

6

showed that his counsel had failed to investigate, concluding that they amounted to nothing more than speculation.

¶ 25    As in *Knowles* and *Cooper*, defendant's claim of a failure to investigate is based on pure speculation. The only "evidence" he cites in support of his claim that counsel did not investigate D.D.'s medical records is that counsel sought to defer his opening statement until the second day of trial. We fail to see how counsel's desire to defer his opening statement proves that he failed to investigate the victim's medical records, but defendant seems to imply that counsel was unprepared and merely stalling for time in any way possible. However, as noted, we must assume that counsel's decisions were strategic, and he might well have wanted the jury to hear his summary of the expected evidence closer to the time that he was actually going to present his case.

¶ 26    The record actually refutes defendant's claim that counsel did not investigate the evidence in question. In arguing the defense motion to allow evidence that D.D. had also accused her half-brother of sexual assault, counsel referred to D.D.'s medical records. Although it is not completely clear from the record whether D.D.'s accusations against her brother came before, after, or in between the incidents with defendant, counsel asserted that they came during the "exact same time frame" as defendant's alleged conduct and, that medical records from that time period revealed "nothing abnormal." Thus, counsel was aware that D.D.'s medical records apparently showed no evidence of physical injury during the relevant time period, and we assume that the decision not to pursue this avenue of defense was strategic.

¶ 27    Moreover, such a decision was reasonable. Initially, we note that defendant did not attach any medical records to his petition or identify anything specific in those records that would have supported his defense. Thus, this aspect of the claim, too, is based on speculation. Assuming that he is referring to the fact that the victim suffered no physical trauma, this would not necessarily lead to a conclusion that the alleged sexual conduct did not occur.

7

¶ 28    Defendant was convicted of predatory criminal sexual assault of a child. To prove him guilty of that offense, the State had to show he committed an act of "sexual penetration" with the victim. 720 ILCS 5/12-14.1(a)(1) (West 2020). "Sexual penetration" is defined as "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person." *Id.* § 11-0.1. Thus, lack of vaginal trauma is not inconsistent with penetration. *People v. Raymond*, 404 Ill. App. 3d 1028, 1040 (2010) ("the lack of semen or trauma to the victim's genitals is not dispositive of the issue of penetration"). Accordingly, counsel could reasonably have concluded that introducing the victim's medical records would not significantly advance defendant's claim that the alleged conduct did not occur. Counsel instead attempted to prove essentially the same thing in a different way—through testimony of former residents of the house to show that the crowded and chaotic conditions in the house would have made it difficult for defendant to have molested the victim as often as she claimed, and no one present in the house observed anything unusual about their relationship.

¶ 29    In his petition, and in his response in this court, defendant cites a federal *habeas corpus* case, *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998). *Holsomback* is superficially similar to this case but distinguishable in critical respects. In *Holsomback*, the defendant's 10-year-old son testified that the defendant had repeatedly anally assaulted him but, although he was examined by a doctor for signs of sexual abuse, the prosecution presented no medical evidence. *Id.* at 1384.

¶ 30    In his *habeas* petition, the defendant alleged that his trial counsel was ineffective for failing to even investigate the possibility of presenting medical evidence that the victim suffered no physical injuries. Trial counsel conceded that he did not even investigate the possibility of presenting medical evidence—he did not subpoena the victim's medical records or interview either of the doctors who examined him. Moreover, the Eleventh Circuit seems to have been incredulous that the conduct alleged—repeated anal penetration beginning when the victim was four years

8

old—would have left no physical injury whatsoever, making the decision not to investigate even more puzzling. Finally, the opinion makes no reference to the defense putting on any evidence whatsoever. Here, the record shows that counsel was familiar with the victim's medical records, the conduct the victim described would not necessarily be expected to result in physical injury, and the defense presented multiple witnesses to establish that repeated sexual conduct between defendant and the victim was unlikely.

¶ 31     Defendant's second contention, that counsel was ineffective for failing to object to the use of A.B.'s testimony as evidence of defendant's propensity to commit sexual offenses, need not detain us long. The record shows that counsel *did* object when the State first sought to use A.B.'s testimony. Counsel did not renew the objection when A.B. testified at trial, thus forfeiting the issue. See *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002) (failure to renew at trial an objection to a ruling on a motion *in limine* results in forfeiture). However, defendant has not argued that the court's original ruling was an abuse of discretion. Thus, renewing the objection would have been futile.

¶ 32     Defendant's third contention was that counsel was ineffective for failing to introduce A.B.'s CAC interview to prove that her trial testimony was perjured. As with defendant's first claim, this one is speculative. A.B.'s earlier interview is not in the record and defendant did not attach any portion of it to his petition. He does not specify anything in that interview that would prove A.B.'s trial testimony was perjured. She acknowledged on direct examination a significant discrepancy from the earlier interview—that she did not previously mention defendant's penetration—and explained that she did not feel comfortable talking about it.

¶ 33     Initially, it is far from clear that A.B.'s earlier interview would have been admissible to impeach her. See *Needy v. Sparks*, 51 Ill. App. 3d 350, 371 (1977) (witness may not be impeached on collateral, irrelevant, or immaterial matters). Defendant was not charged with a crime based on

9

his conduct with A.B. Her testimony was admitted solely to show defendant's propensity to commit sexual offenses and thus could be considered collateral. In any event, decisions on cross-examination and impeachment of witnesses are generally matters of trial strategy immune to claims of ineffective assistance of counsel. *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997). In the absence of an allegation that there was something in the interview that would have impeached A.B.'s testimony beyond what she admitted to, we cannot say that counsel's decision not to cross-examine her about the prior interview amounted to ineffective assistance.

¶ 34    Defendant's fourth contention was that counsel was ineffective for failing to introduce the CAC interviews of D.D.'s siblings, or to call the other siblings, to impeach K.J.'s trial testimony. As with the previous issue, the interviews are not in the record and defendant fails to point to anything specific in those interviews that would have impeached K.J.'s trial testimony that defendant and D.D. were frequently alone together. The record shows that counsel was aware of these interviews because the court paused the trial to allow him to view them. After doing so, counsel made the presumptively strategic decisions to not introduce the interviews or to call D.D.'s siblings. We note that the court commented that the CAC interviews would have hurt defendant's case rather than helped it. Thus, defendant has failed to establish that the failure to use the interviews was ineffective assistance.

¶ 35    Defendant further contended that counsel was ineffective for failing to object to the prosecutor's reference in closing argument to his absence from trial. Defendant apparently equates this with a comment on his failure to testify, but the two situations are distinct.

¶ 36    An accused has a constitutional right not to testify (see *Griffin v. California*, 380 U.S. 609 (1965)), and the prosecutor is forbidden to comment directly or indirectly on the exercise of that right. *People v. Arman*, 131 Ill. 2d 115, 125-26 (1989). However, prosecutors may comment on a defendant's complete absence from trial. *People v. Garza*, 180 Ill. App. 3d 820, 826 (1989); *People*

*v. Zielinski*, 77 Ill. App. 3d 157, 161-62 (1979). When a defendant is voluntarily absent from trial "the tendency of jurors to speculate as to the reasons for [the] absence inherently arises." *People v. Ocasio*, 205 Ill. App. 3d 157, 162 (1990). The defendant's decision is responsible for that speculation and any resulting prejudice, and it is thus not error for the prosecutor to merely state the obvious. *Id.*

¶ 37    Finally, because none of defendant's individual allegations of ineffective assistance has merit, he cannot establish cumulative error. See *People v. Brown*, 2023 IL App (4th) 220476, ¶ 38 (where none of the alleged errors amount to reversible error on any individual issue, there generally is no cumulative error). For the same reason, appellate counsel was not ineffective for failing to raise these issues on direct appeal. See *People v. Simms*, 192 Ill. 2d 348, 362 (2000) ("Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong.").

¶ 38    OSAD further concludes that there is no nonfrivolous argument that the court erred in allowing defendant to proceed *pro se*. A postconviction petitioner has a right to represent himself in postconviction proceedings. *People v. Harrison*, 2018 IL App (3d) 150419, ¶ 11; 725 ILCS 5/122-4 (West 2010). In fact, a court must accept a defendant's knowing and intelligent request to proceed *pro se* provided that the waiver is clear and unequivocal, not ambiguous. *Id.* (citing *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011)). In deciding whether a defendant has intelligently waived his right to counsel, a court must consider the particular facts of the defendant's case, including his background, experience, and conduct. *Id.* (citing *People v. Lego*, 168 Ill. 2d 561, 564-65 (1995)). We review a trial court's decision to allow a defendant to waive his right to counsel for an abuse of discretion.

¶ 39    Here, the court granted defendant's request to represent himself following a hearing on May 25, 2022. Defendant confirmed he wanted to proceed without counsel. He acknowledged that he had never represented himself before but affirmed that he can read and write. He said that he had a GED and had completed a paralegal course in advanced criminal law. The court explained that if defendant was not represented by counsel, the court could not help him. Defendant said he understood and nevertheless wanted to proceed *pro se*. As defendant's waiver of postconviction counsel was clear and unequivocal, and knowing and intelligent, it was valid.

¶ 40    In his response, defendant largely repeats the arguments he made in his petition. We have already explained why they lack arguable merit.

¶ 41                                CONCLUSION

¶ 42    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 43    Motion granted; judgment affirmed.