Cody Cheyenne **MEDEARIS,**
Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**[1]

No. CIV.05 3035.
No. CR. 02 30026.

United States District Court,
D. South Dakota,
Central Division.

Nov. 15, 2006.

---

**1.** Unlike a habeas corpus petition filed under 28 U.S.C. § 2254, which names the person or agency with custody over the petitioner as the party respondent, the 28 U.S.C. § 2255 motion retains the "United States v [Movant]" used in the criminal proceedings under attack. *See* Advisory Committee Note to Rule 4

of the Rules Governing § 2255 Proceedings (§ 2255 Rules) ("there is no respondent involved in the [§ 2255] motion (unlike habeas) and the United States Attorney, as prosecutor in the case in question, is the most appropriate one to defend the judgment and oppose the motion"); *see also* Advisory Committee Note to Rule 1 of the § 2255 Rules ("a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action"). The fact that many § 2255 cases are reported with the prior criminal caption re-

versed—i.e., as "[Movant] v. United States"—indicates that courts do not attach a great deal of importance to this requirement.

Randolph J. Seiler, Assistant United States Attorney, Pierre, SD, for Plaintiff.

Brad A. Schreiber, Schreiber Law Firm, Belle Fourche, SD, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING CERTIFICATE OF APPEALABILITY

KORNMANN, District Judge.

The Court submitted the above-entitled matter to U.S. Magistrate Judge Mark A. Moreno and the magistrate judge submitted his report and recommendation to the Court on October 23, 2006, Doc. 19. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636. Petitioner timely filed objections, Doc. 21, on November 2, 2006.

The Court has conducted a *de novo* review of the file and has considered petitioner's claims of ineffective assistance of counsel. I was the trial judge and observed counsel. I also heard all the evidence and arguments. A claim of ineffective assistance of counsel is scrutinized under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For petitioner to prevail, he must show: "(1) that his attorney's performance was deficient, falling below professional standards of competence; and (2) that the deficient performance prejudiced his defense." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (*citing Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674).

Petitioner objects to the recommendation that trial counsel was not ineffective in failing to call a medical expert to rebut the opinions of Dr. Zijad Sabovic, the emergency room physician who treated the victim. Dr. Sabovic opined that the victim sustained injuries which were consistent with forced sexual intercourse. I granted a defense motion (although untimely) to prevent Dr. Sabovic from expressing any opinion as to the ultimate issue—sexual abuse or rape—and he complied with the order. Upon cross examination, Dr. Sabovic admitted that he could not express an opinion as to whether the sex was consensual or not. He also admitted that "rough sex" could cause the laceration suffered by the victim. The defense in this case was that the victim and the defendant had consensual "rough sex" in a car, which caused small bruises on the victim. Defense

counsel argued in closing that the bruises were consistent with "rough sex" in a car and he also reminded the jury that Dr. Sabovic said that the laceration the victim suffered could have resulted from consensual sex. No non-treating expert doctor could have said anything more favorable. Counsel was not deficient in failing to call a medical expert.

The affidavit (Doc. 18–2) from Mary E. Carr, M.D., claims that the government expert witness at trial was not competent to express an opinion vis-a-vis rough consensual sex and forced sex. I reject that. Dr. Carr may well be more qualified but that does not make Dr. Sabovic unqualified. I would not have prohibited Dr. Sabovic from expressing the opinions he expressed. I also reject the claim of Dr. Carr that victims of rape "are normally in extreme distress to the point of being uncontrollable and needing sedation." I have presided over hundreds of sexual assault cases and know that this claim of Dr. Carr is not true.

Petitioner objects to the recommendation that trial counsel was not ineffective in failing to timely disclose a letter written by the victim to the defendant wherein she recorded her "fear of losing him." That letter was excluded by me because I do not permit either side to conduct a trial by ambush. I concluded that defense counsel had not timely disclosed the letter and should have done so. On appeal, the ruling was that it was harmless error to exclude the letter. I concur with the court of appeals. Petitioner was not unfairly prejudiced by the exclusion of that letter. The testimony as a whole was sufficient, and trial counsel vigorously argued in closing, that the victim repeatedly broke off her relationship with the defendant and then tried to re-establish the relationship, becoming very angry when she would learn that the defendant had dated other women in the interim. The letter would have added nothing that the jury had not already heard from other evidence. The jury knew that the victim clearly had a motive to lie but found that she was not lying as to her allegations made against the defendant in this case.

I continue to believe that the sentence which I was required to impose was excessive and unfair. That, however, does not permit me to set aside the conviction and sentence.

I find that the report and recommendation of the magistrate judge should be accepted and the case dismissed.

Now, therefore,

IT IS ORDERED:

1. The report and recommendation of the U.S. Magistrate Judge filed October 23, 2006, Doc. 19, shall be and is hereby adopted as the findings of fact and conclusions of law herein.

2. The petitioner's objections, Doc. 21, are overruled.

3. The motion to vacate, set aside, or correct petitioner's conviction and sentence is denied.

IT IS HEREBY CERTIFIED that there does not exist probable cause of an appealable issue with respect to the Court's order denying petitioner's petition for a writ of habeas corpus. No certificate of appealability will be granted. 28 U.S.C. § 2253(c). This in no way hampers the petitioner's ability to request issuance of the certificate by a circuit judge pursuant to Fed. R.App. P. 22.

REPORT AND RECOMMENDATIONS FOR DISPOSITION OF MOTION UNDER § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

MORENO, United States Magistrate Judge.

[¶ 1] The above-captioned 28 U.S.C. § 2255 case was referred to this Court

by the District Court[2] pursuant to 28 U.S.C. § 636(b)(1)(B) for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition thereof. Civ. R. 6.

[¶ 2] Having carefully reviewed and considered all of the records on file and being fully advised in the premises, the Court does now make and propose the following findings, report and recommendations for disposition of the case.

## I.

[¶ 3] Defendant, Cody Cheyenne Medearis (Medearis), an Indian, was indicted on and found guilty of two counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a) and 2246(2). Crim. R. 124 (Jury Instr. Nos. 3, 9–11), 125. He was acquitted of one count of kidnapping. *Id.* at 125. The trial court departed downward to a guideline range of 108 to 135 months, and imposed concurrent sentences totaling 108 months of imprisonment, 3 years of supervised release and $200 in special assessments. Sent. Tr. 37–40, 42.

[¶ 4] Medearis appealed his conviction and sentence. Crim. R. 151. The Eighth Circuit Court of Appeals, however, affirmed the trial court's judgment. *United States v. Medearis,* 380 F.3d 1049, 1050, 1060 (8th Cir.2004).

[¶ 5] Medearis then filed a timely motion under § 2255 to vacate, set aside or correct his sentence. Civ. R. 1. The District Court thereafter ordered Plaintiff, United States of America (Government), to serve and file an answer or responsive pleading and supporting memorandum. *Id.* at 5, p. 2. The District Court, at the same time, referred the case to this Court to handle on a report and recommendation basis. *Id.* at 6.

[¶ 6] The Government complied with the District Court's order, filing an answer, containing a motion to dismiss for failure to state a cognizable claim under § 2255, a supporting memorandum and an affidavit signed by trial counsel. *Id.* at 11, 12–1, 12–2. Medearis later submitted a reply to the Government's answer and motion as well as an affidavit from a physician retained by him. *Id.* at 17, 18–1, 18–2.

## II.

[¶ 7] The relevant facts are specifically set forth in the Eighth Circuit's decision, *see Medearis,* 380 F.3d at 1051–53, and may be briefly summarized as follows.

[¶ 8] Medearis and Sherri Lynn Whiting, the victim in this case, had an off-and-on relationship between 1998 and 2002. T. Tr. 91, 94–95, 466. The two had a son together and Whiting had a daughter from a prior relationship. *Id.* at 90, 93–94, 474.

[¶ 9] During the early morning hours of January 13, 2002, Whiting was taken against her will to a trail just off of a remote road on the Rosebud Indian Reservation. *Id.* at 135–36. There, Medearis pulled her pants down as she pleaded for him to stop. *Id.* at 137. Eventually, Medearis forced Whiting's hands behind her head as he drove his penis into her vagina, telling her he "always wanted to do this." *Id.* at 138, 144. After removing his penis, Medearis inserted his fingers inside Whiting's vagina while she continued to scream. *Id.* at 139. Medearis then removed his fingers from Whiting's vagina and smeared them across her face, sneering, "this is how you f* * *ing smell." *Id.* at 141–42. Following this, Medearis again tried to insert his penis into Whiting's vagina, but was unable to maintain an erection and

---

2. The Honorable Charles B. Kornmann, United States District Judge, presiding.

penetrate her. *Id.* at 141, 246. A short time later, Whiting exited the car and walked to Medearis' mother's house and was taken to her aunt's house. *Id.* at 139, 145–48. Eventually, Whiting was transported to the Indian Health Service Hospital in Rosebud where Dr. Zijad Sabovic examined her and a rape kit was administered. *Id.* at 148, 151–52.

[¶ 10] The incident was reported to law enforcement authorities that day. *Id.* at 149–50. An Indictment was returned against Medearis about two and-a-half months later. Crim. R. 1.

[¶ 11] The jury trial lasted three days. *Id.* at 126. Medearis himself testified along with four other defense witnesses. *Id.* at 126, pp. 5–6. On January 10, 2003, the jury acquitted Medearis of the kidnapping charge, but found him guilty of the two aggravated sexual abuse offenses. *Id.* at 125.

### III.

[¶ 12] Medearis requests that he be granted an evidentiary hearing on his Motion. Civ. R. 17 at 3. Before doing so, the Court must determine, in accordance with Rules 4(b) and 8(a) of the § 2255 Rules, whether such a hearing is required in this instance.

[¶ 13] An evidentiary hearing need not be held "if (1) the [defendant's] allegations, accepted as true, would not entitle [him] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than state-

ments of fact." *Buster v. United States,* 447 F.3d 1130, 1132 (8th Cir.2006) (quoting *Sanders v. United States,* 341 F.3d 720, 722 (8th Cir.2003), *cert. denied,* 540 U.S. 1199, 124 S.Ct. 1460, 158 L.Ed.2d 116 (2004)); *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998). Likewise, an evidentiary hearing is not required "where the files and the records of the case conclusively show that the [defendant] is not entitled to relief." *Von Kahl v. United States,* 242 F.3d 783, 787 (8th Cir.), *cert. denied,* 534 U.S. 941, 122 S.Ct. 317, 151 L.Ed.2d 237 (2001); *Saunders v. United States,* 236 F.3d 950, 952 (8th Cir.), *cert. denied,* 533 U.S. 917, 121 S.Ct. 2524, 150 L.Ed.2d 696 (2001); *see also Standing Bear v. United States,* 68 F.3d 271, 272 (8th Cir.1995), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996).

[¶ 14] Medearis' claims are ones that are capable of resolution from the record. *Blankenship v. United States,* 159 F.3d 336, 337–39 (8th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999); *Payne v. United States,* 78 F.3d 343, 347 (8th Cir.1996). After close scrutiny of the records on file, the Court is convinced that Medearis cannot prevail on his claims. *Saunders,* 236 F.3d at 952–53; *see also United States v. Regenos,* 405 F.3d 691, 694 (8th Cir.2005); *Payne,* 78 F.3d at 345–48. As such, Medearis' request for an evidentiary hearing is denied and the Court shall proceed to dispose of his Motion in a summary manner as "justice dictates." *See* Rules 4(b) and 8(a) of the § 2255 Rules.[3]

---

3. It appears that the § 2255 Rules provide for an evidentiary hearing when the standards enunciated in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) require, or at least permit, one in the discretion of the assigned judicial officer. Although the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Public Law No. 101–132, Title I, Section 105–110 Stat. 1220, modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave in tact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases.

## IV.

### A.

[¶ 15] Medearis raises two ineffective assistance of counsel claims. Civ. R. 17 at 1–2. He maintains that trial counsel was ineffective because counsel (1)(a) relied solely on cross-examination to establish any weaknesses in Dr. Sabovic's opinions and (b) failed to call a medical expert to counter Dr. Sabovic's testimony and to present the defense's assessment of the physical evidence; and (2) failed to timely disclose a letter that Whiting wrote, after the January 13th incident, wherein she professed her continuing love for Medearis. Civ. R. 18–1 at 4–5. He also maintains that his counsel's ineffectiveness, when viewed cumulatively, prejudiced him, resulting in a trial whose verdict is questionable. *Id.*

### B.

 [¶ 16] The United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish that trial counsel's assistance was ineffective, a defendant:

> First[ ] must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

In the case at hand, an evidentiary hearing is neither mandated nor warranted under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs of this test must be satisfied for there to be a Sixth Amendment violation. *Strickland,* 466 U.S. at 687, 700, 104 S.Ct. 2052.

### (1)

[¶ 17] The purpose of ineffectiveness review is not to grade counsel's performance, but rather, to determine whether a defendant's Sixth Amendment right to counsel has been violated. 466 U.S. at 688–89, 104 S.Ct. 2052. In the review process, a court must recognize that representation is an art and that conduct that is unprofessional in one case may not necessarily be so in another. *Id.* at 693, 104 S.Ct. 2052. Miscues and omissions are inevitable in any case and there is no such thing as a "perfect" trial. *See Jones v. Delo,* 258 F.3d 893, 902 (8th Cir.2001), *cert. denied,* 535 U.S. 1066, 122 S.Ct. 1936, 152 L.Ed.2d 841 (2002).

 [¶ 18] The burden is on the defendant to prove, by a preponderance of the evidence, that counsel's performance was unreasonable. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The defendant must establish that counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

 [¶ 19] "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. A court must avoid second guessing counsel's strategy for obtaining a favorable result for the defendant. *Id.*

[¶ 20] A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all sig-

*Townsend.*

nificant decisions in the exercise of reasonable, professional judgment." *Id.* at 689–90, 104 S.Ct. 2052. Counsel therefore cannot be judged ineffective as long as the approach taken "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "As is obvious, *Strickland's* [performance standard] although by no means insurmountable, is highly demanding." *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

[¶ 21] The reasonableness of counsel's performance is an objective inquiry. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; *see also Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). And, because counsel's conduct is presumed reasonable, the defendant must demonstrate that no reasonable or competent lawyer would have made the choices his counsel made. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

[¶ 22] When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

[¶ 23] There are no particular set of rules for counsel's conduct that can satisfactorily take into account the variety of circumstances faced by counsel or the range of legitimate decisions regarding how best to represent a defendant. *Id.* at 688–89, 104 S.Ct. 2052. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689, 104 S.Ct. 2052. The Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that [the] defendant[ ] receive[s] a fair trial." *Id.*

(2)

[¶ 24] "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692, 104 S.Ct. 2052. The burden is on the defendant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

[¶ 25] When a conviction is challenged, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt as to the defendant's guilt. *Id.* at 695, 104 S.Ct. 2052. In making this determination, a court must consider the totality of the evidence before the jury. *Id.* A jury verdict only weakly supported by the record is more likely to have been affected by counsel's errors than one containing overwhelming evidence of guilt. *Id.* at 696, 104 S.Ct. 2052. Taking into account the effect of the errors on the verdict, a court making its prejudice inquiry must ask if the defendant has met his burden of showing that it is reasonably likely that the verdict would have been different without the errors. *Id.*

[¶ 26] The *Strickland* test provides the necessary framework for resolving virtually all ineffective assistance of counsel claims. *Williams,* 529 U.S. at 391, 120 S.Ct. 1495. Where the defendant has a right, like the constitutionally protected right to provide the jury with mitigating

evidence that his counsel either failed to discover or failed to present, the *Strickland* "outcome-determinative" standard, *see* 466 U.S. at 691–94, 104 S.Ct. 2052, is used to decide prejudice. *Williams,* 529 U.S. at 393, 120 S.Ct. 1495.

## C.

[¶ 27] Applying these precepts to the instant case leads inescapably to the conclusion that Medearis has failed to meet the rigid standards of *Strickland* and its progeny and therefore cannot prevail on or obtain § 2255 relief for his ineffective assistance of counsel claims.

## V.

[¶ 28] Medearis first claims that his trial counsel's failure to call a rebuttal expert medical witness to dispel Dr. Sabovic's assessment of the physical evidence amounted to ineffective assistance. Civ. R. 17 at 1–2. Medearis contends that counsel, in addition to attacking Dr. Sabovic's opinions through vigorous cross-examination, should have also presented expert medical testimony to counter these opinions and support his version of what happened. *Id.* at 18–1, pp. 6, 9, 12.

[¶ 29] "However, trial counsel is not required to employ the services of experts, provided that counsel prepares an adequate defense for a client through careful investigation of the facts surrounding the case." *Battle v. Delo,* 19 F.3d 1547, 1557 (8th Cir.1994). The decision whether to call a medical expert in a sexual assault case to rebut the prosecution's expert (as opposed to simply relying on cross-examination of that expert) is a strategic one. *Ellefson v. Hopkins,* 5 F.3d 1149, 1150–51 (8th Cir.1993); *Denoyer v. Weber,* 2005 SD 43, ¶¶ 35–37, 694 N.W.2d 848, 858; *Davi v. Class,* 2000 SD 30, ¶¶ 28–32, 609 N.W.2d 107, 114–15; *Garritsen v. Leapley,* 541 N.W.2d 89, 93–94 (S.D.1995). The fact

that there is a difference of opinion as to the trial tactics employed by counsel in the presentation of a consent defense does not constitute ineffective assistance. *Denoyer,* 2005 SD 43, ¶¶ 35–36, 694 N.W.2d at 858; *Garritsen,* 541 N.W.2d at 94.

[¶ 30] Trial counsel, a member in good standing of the State Bar of South Dakota with 31 years of practicing experience, has represented numerous criminal defendants in federal court within this district for many years. Civ. R. 12–2 at 1, ¶ 2. Counsel succeeded in persuading the jury to acquit Medearis of the kidnapping offense and was instrumental in convincing the trial court to depart downward to a guideline range of 108 to 135 months and to ultimately sentence Medearis to the low end of the latter range (two concurrent 108–month custody terms).

[¶ 31] At trial, Medearis admitted that he had unforced sexual intercourse with Whiting in his car. T. Tr. 488. According to Medearis, after consensual sex, Whiting became irate when she noticed a hickey on his neck that Rikki Siers had earlier given him and told him that he "would never see his f* * *ing son again." T. Tr. 429, 489–90; *see also* Crim. R. 150 at 2. Medearis then drove to his mother's house where Whiting got out of the car and fell, landing on her knees. T. Tr. 493, 495, 516, 547–48. In attempting to explain Whiting's injuries, Medearis attributed many of them to he and Whiting having rough sex in a small car. *Id.* at 543–45, 553–55. To corroborate Medearis' testimony, Siers was called as a witness and testified that she had sex with Medearis on January 10 and 11, 2002, in his car and that having sex in such close quarters caused her to bruise. *Id.* at 427–28. In his closing argument to the jury, trial counsel continuously attacked Whiting's credibility and was adamant that the evidence of record was inconsistent with rape. Closing Arg. Tr. 26–34.

[¶ 32] Trial counsel effectively cross-examined Dr. Sabovic, raising doubts as to how much weight, if any, should be given to his testimony. Significantly, counsel was able to get Dr. Sabovic to admit that:

1. He could not say for sure whether Whiting had consensual sex or not;

2. He failed to note in the emergency room (ER) report that Whiting was suffering from emotional distress when he examined her;

3. There is no mention of ejaculation or oral sex in the ER report (because Whiting had not told him of these things);

4. He did not ask Whiting whether she bruised easily;

5. No blood work was done on Whiting to see if she had a low platelet level and therefore was prone to bruise easily; [4]

6. There is no reference in the ER report to digital penetration (and there would have been had Whiting disclosed the same);

7. He did not observe any lacerations or abrasions to Whiting's hymenal ring or lesions on her cervix;

8. Rough sex or a bad angle of entry could have caused a superficial laceration like the one that he saw on Whiting's vaginal vault and pubic area;

9. He did not have an opinion, two weeks before the trial when counsel talked to him, as to whether Whiting's injuries were consistent with forcible sex, but instead only formulated his opinion shortly before testifying; and

10. He refused to answer questions posed by counsel, just before testifying at trial, that related specifically to whether there was nonconsensual sex. T. Tr. 281–82, 284–86, 290, 293–97.

[¶ 33] In her Affidavit, Dr. Mary Carr, an emergency medicine physician retained by Medearis, opined that "Dr. Sabovic was not qualified to render any opinions in this case" and that "the evidence is inconclusive of a sexual assault/rape." Civ. R. 18–2 at 2, ¶ 6. Dr. Carr's opinions, however, ignore and/or severely discount several important matters. First, at the time of the trial, Dr. Sabovic had been a board certified family practice physician for at least five years and was licensed to practice in four states. T. Tr. 257, 259. His training and experience, as evidenced by his testimony and curriculum vitae (Exhibit 1), were more than sufficient to qualify him as an expert medical witness and to permit him to offer opinions concerning the source and cause of Whiting's injuries. *Id.* at 257–61.

[¶ 34] Second, unlike Dr. Carr, Dr. Sabovic talked to and examined Whiting in person a few hours after the incident occurred. *Id.* 263–79, 301, 308. Dr. Sabovic had the benefit of seeing and talking to Whiting while she was still reliving the moment, *see id* at 265–79, and was not limited, like Dr. Carr, to reviewing a cold record on an *ex post facto* basis, *see* Civ. R. 18–2 at 1, ¶ 2.

[¶ 35] Third, and perhaps most importantly, the Eighth Circuit's decision on direct appeal belies Dr. Carr's assertion that the evidence of sexual abuse was "inconclusive." Indeed, the appeals court specifically held that the evidence was "more than sufficient" and "amply support[ed] the jury's conclusion that Medearis used force or the threat of force to cause Whit-

---

4. Sabovic acknowledged that people with low platelet levels are more likely to bruise. T. Tr. 286.

ing to engage in two sexual acts." *Medearis,* 380 F.3d at 1060.

[¶ 36] Whether Whiting had an excoriation of the vaginal vault, as Dr. Sabovic testified, *see* T. Tr. at 270–72, 291–94, or to the posterior fourchette, as Dr. Carr asserts, *see* Civ. R. 18–2 at 2, ¶ 5, matters not. The ER report contained a drawing that showed where the excoriation was in Whiting's genital area and Dr. Sabovic himself drew a diagram of the area for the jury during his testimony. T. Tr. 272, 291–94. His sketches made it clear that Whiting suffered a new injury of recent origin where the lips of her vagina came together in the area of her rectum. *Id.* at 270–72, 291–94.

[¶ 37] Interestingly, Dr. Carr found it "significant" that "Dr. Sabovic testified that [Whiting], at the time she presented herself, was alert and not experiencing any distress, *no distress.*" Civ. R. 18–2 at 2, ¶ 5 (emphasis in the original). A review of the trial transcript, however, reveals that Dr. Sabovic initially testified that Whiting "was crying and severely emotionally disturbed." T. Tr. 267. When asked what he meant by this description, Dr. Sabovic explained that Whiting had tears, that began to dry, on her cheeks and was "numb" (meaning that she was in a kind of state where he did not know what would happen, whether she would cry, kick him and if he would be able to even do an examination of her). *Id.* Then, in later testimony, Dr. Sabovic reiterated that when he examined Whiting she was suffering from emotional distress. *Id.* at 284.

[¶ 38] In a similar vein, Dr. Carr equivocally asserts that the bruises to Whiting's knees and shoulder "indicate a blunt force injury and could occur from a fall, or a shove with a fall, or simply being hit by a hard surface to these areas." Civ. R. 18–2 at 2, ¶ 5. Yet, when these injuries are considered along with the injuries noted to Whiting's vaginal area and her description of what transpired that night, Dr. Sabovic's medical opinions, regarding whether a sexual assault and/or rape took place, are reasonable, plausible and supported by the evidence. *See Medearis,* 380 F.3d at 1051–53, 1058–60.

[¶ 39] Medearis cites *Gersten v. Senkowski,* 299 F.Supp.2d 84 (E.D.N.Y.2004), *aff'd,* 426 F.3d 588 (2d Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2882, 165 L.Ed.2d 894 (2006); and *Holsomback v. White,* 133 F.3d 1382 (11th Cir.1998), to buttress his contention that trial counsel should have consulted with or called a medical expert to negate or at least challenge Dr. Sabovic's opinions and to provide a different view of the physical evidence. *Gersten* and *Holsomback,* however, are both child sexual abuse cases, not an adult rape case, such as this one where the defendant admitted having sexual intercourse with the victim, but claimed it was consensual.[5]

[¶ 40] In *Gersten,* trial counsel's cross-examination of the examining physician, "indicated little understanding of the medical fundamentals and how they might impact an expert's evaluation" of the case. 299 F.Supp.2d at 103. And,

[d]espite complicated medical issues [ ] counsel failed to consult a medical expert or otherwise educate himself about the physical indicia of sexual abuse. His conversation with a registered nurse friend was a poor substitute for consultation with an expert in the field of child sexual abuse, especially since it did not

---

5. Child sexual abuse cases, unlike other cases, are "unique, requiring heightened diligence on the part of defense counsel." *Bell v. Miller,* No. 05CV0663(ARR), 2005 WL 1962413 at *7, (E.D.N.Y. Aug.12, 2005) (citing and distinguishing *Gersten* ); *see also Lazicki v. Moore,* No. Civ. A. 041041(JAG), 2006 WL 840398 at * 13, n. 12 (D.N.J. Mar. 28, 2006).

involve a detailed explanation of the medical terminology or its significance to the case. Furthermore, there is nothing to suggest that [ ] counsel had previous significant experience litigating child sexual abuse cases. His lack of familiarity with the relevant medical terms and their significance limited his ability to effectively cross-examine [the physician].

*Id.*

[¶ 41] Similarly, in *Holsomback*, trial counsel declined to contact either the physician who examined the child victim, after the last alleged incident of sodomy, or the child's family physician, both of whom were readily identifiable to counsel. 133 F.3d at 1387. Likewise, counsel made no effort to obtain the records following the child's medical examination. Had counsel interviewed the physicians and the medical report from the examining physician, counsel's tactical decision not to call either physician "might have fallen well within 'the wide range of reasonable professional assistance.'" *Id.* at 1388 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

[¶ 42] By contrast, Medearis' trial counsel exhibited, throughout the trial, the knowledge and acumen of an experienced and skilled criminal defense lawyer who understood and was adept in all facets of sexual assault and rape cases. He was obviously well educated with the sometimes complicated medical issues, the terminology that goes with them and the indicia present in rape cases like this one where consent/forced sex is at issue. Counsel contacted and talked to Dr. Sabovic about his findings and opinions a couple of weeks before trial and again shortly before Dr. Sabovic testified. T. Tr. 281,

296–97. In addition, counsel not only obtained Whiting's ER records, but also used and scored points with them in his cross-examinations of Dr. Sabovic and Phyllis Provancial, the emergency room nurse. *Id.* 280–98, 309–10. Counsel's cross-examination of Dr. Sabovic was, at times, potent, and undercut, or at least weakened, the overall impact of Dr. Sabovic's testimony and the opinions he expressed. *See* Crim. R. 150 at 2–3. These and other factors make counsel's performance here a far cry from that which was found to be deficient in *Gersten* and *Holsomback*.

[¶ 43] Based on the record before it, the Court is satisfied that trial counsel met the performance standards of *Strickland* and its progeny. Counsel's strategic decision not to call a medical expert and to attack the credibility of Dr. Sabovic through cross-examination was a reasonable one and was not deficient, or more importantly, outside the bounds of effective assistance. *Brewer v. United States,* 121 F.3d 712 (table), 1997 WL 464858 at *2 (8th Cir. Aug.15, 1997)(*per curiam*);[6] *Ellefson,* 5 F.3d at 1150–51; *Denoyer,* 2005 SD 43, ¶¶ 35–37, 694 N.W.2d at 858; *Garritsen,* 541 N.W.2d at 93–94; *see also Bucklew v. Luebbers,* 436 F.3d 1010, 1020–21 (8th Cir.), *petition for cert. filed,* (U.S. Aug. 20, 2006) (No. 06–6054); *Knecht v. Weber,* 2002 SD 21, ¶¶ 16–22 & n. 10, 640 N.W.2d 491, 498–501 & n. 10; *compare Foster v. Lockhart,* 9 F.3d 722, 726–27 (8th Cir.1993) (trial counsel's failure to investigate, develop and present strong defense of impotency in a forcible rape case involving vaginal penetration and ejaculation, amounted to ineffective assistance).

---

**6.** *Brewer* is an unpublished opinion. Pursuant to 8th Cir. R. 28A(i) (2005), this opinion is cited because it has "persuasive value on a material issue and no published opinion ... [ of the Supreme Court or the Eighth Circuit] would serve as well." A copy of the opinion is attached hereto.

[¶ 44] Even if, somehow, trial counsel's performance was subpar under the first prong of the *Strickland* test, Medearis nevertheless suffered no actual prejudice as a result of it. After careful review of the trial record, the Court is confident that there is no reasonable probability that the jury would have acquitted Medearis of the two aggravated sexual abuse charges had counsel called a medical expert to negate Dr. Sabovic's testimony and provided an alternate explanation for Whiting's injuries and the rape kit evidence. *Strickland,* 466 U.S. at 694–96, 104 S.Ct. 2052.

[¶ 45] The case against Medearis "was not especially close" on the two charges he was convicted of. *Medearis,* 380 F.3d at 1059. Whiting's version of the encounter was corroborated by the physical evidence and the jury quite clearly found her to be the more credible witness. *Id.* at 1059–60. Medearis' own actions and conduct, no doubt, contributed to his downfall including the fact that he fled while on pretrial release, used drugs, slept with other women, engaged, at times, in violent conduct with Whiting and asked how Whiting was doing several hours after the incident. *Id.; see also* Crim. R. 150 at 3 ("The defendant in this case has largely caused his own difficulties by absconding. The evidence of flight and thus evidence of guilt was presented to the jury and was likely very damaging to the credibility of the defendant."); Sent. Tr. 31–32. ("He shot himself in the foot by running, by failing to appear. * * * [A]nd, of course, that looked very bad to a jury. They take a dim view of that. ... That's a conscious indication of guilt when you run away. * * * They also would take a dim view of all [his] immoral conduct.... Having sex with various women in the front seat of his car. If he thinks that goes over well with a jury in South Dakota he's sadly mistaken.").

[¶ 46] Beyond this, Dr. Sabovic's testimony was marginal at best. The observations made by the trial court in its order denying Medearis' new trial motion are particularly apropos on this point:

The examining M.D. did not, of course, express any opinion that the victim had been raped. He simply expressed the rather luke-warm opinion that what he saw would be consistent with a rape. He readily admitted on cross-examination that it could be consistent with other things. In short, the medical testimony was certainly not crucial in this case. Counsel for defendant effectively brought out the fact that the testifying M.D. did not know what had happened. * * * The defendant did not employ or even seek to employ any expert witness to rebut the known opinions of the expert for the plaintiff. The reason is rather obvious: the opinion and testimony did not amount to anything.

Crim. R. 150 at 2–3. Any nonfeasance, therefore, on the part of trial counsel, did not rise to the level of ineffective assistance and therefore cannot provide Medearis with a basis for § 2255 relief. *Bucklew,* 436 F.3d at 1021; *Brewer,* 1997 WL 464858 at *2; *Denoyer,* 2005 SD 43, ¶ 37, 694 N.W.2d at 858; *see also Yellow Hawk v. U.S.,* 314 F.Supp.2d 921, 925, 935 (D.S.D.2004).

## VI.

[¶ 47] Medearis next claims that trial counsel was ineffective for failing to timely disclose a letter Whiting wrote to Medearis "about her fear of losing him." Civ. R. 17 at 1. As an adjunct to his claim, Medearis also claims that the trial court's refusal to permit the letter to be used for impeachment purposes prejudiced his defense and his ability to obtain a fair trial. *Id.* at 18–1, pp. 11–12. A three judge panel of the Eighth Circuit, however, addressed this issue in painstaking detail on

direct appeal, *Medearis,* 380 F.3d. at 1056–60, and concluded that "the use of the letter would not have influenced or altered the outcome of the trial", and that the trial court's refusal to allow the use of it was "harmless error[,]" 380 F.3d at 1060. Granted, the panel decision was by a 2–1 margin, but rehearing by the panel and rehearing *en banc* were both subsequently denied.

[¶ 48] Although courts ordinarily discuss the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding such a claim to approach the inquiry in the same order or to address both components if a defendant makes an insufficient showing on one of them. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. A court, therefore, need not determine the objective reasonableness of trial counsel's conduct before examining the prejudice suffered by the defendant as a result of counsel's alleged failures. *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

■ [¶ 49] Here, trial counsel's conduct and the trial court's evidentiary ruling did not result in a suspect verdict or a trial that was fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Given the strong case against Medearis and the uphill climb he faced, by virtue of his own pre- and post-incident conduct, there is no reasonable probability that the letter, if the same had been admitted and used to impeach Whiting, would have created a reasonable doubt with respect to his guilt and changed the outcome of the case. *Strickland,* 466 U.S. at 694–96, 104 S.Ct. 2052; *Medearis,* 380 F.3d at 1058–60. Counsel and the trial court's handling of the letter did not so upset the adversarial balance between the defense and prosecution to warrant a new trial. *See Odem v. Hopkins,* 382 F.3d 846, 851–52 (8th Cir.2004) (holding *Strickland's* prejudice prong was not met because of overwhelming evidence of guilt); *Bear Stops v. United States,* 339 F.3d 777, 782 (8th Cir.) (holding that the prejudice prong in *Strickland* was not satisfied because counsel's failure to raise an evidentiary issue would not have altered the result of the proceedings because the erroneous admission of the evidence would have constituted harmless error), *cert. denied,* 540 U.S. 1094, 124 S.Ct. 970, 157 L.Ed.2d 803 (2003); *Collins v. Dormire,* 240 F.3d 724, 727–28 (8th Cir.2001) (holding that the defendant did not show prejudice to support ineffective assistance of counsel because any evidentiary error was harmless); *see also Bates v. Blackburn,* 805 F.2d 569, 578 (5th Cir.1986) (harmless error cannot satisfy prejudice prong of *Strickland*), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). Medearis thus cannot prevail on his claims relating to the letter.

## VII.

[¶ 50] A defendant is required to obtain a certificate of appealability (COA) from a district or a circuit judge before appealing from the final order entered in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1)(B). A district court is authorized to issue a COA if the defendant has made a substantial showing of the denial of a constitutional right. § 2253(c)(2); *United States v. Lambros,* 404 F.3d 1034, 1036 (8th Cir.), *cert. denied,* 545 U.S. 1135, 125 S.Ct. 2953, 162 L.Ed.2d 879 (2005); *Garrett v. United States,* 211 F.3d 1075, 1076 (8th Cir.) (*per curiam*), *cert. denied,* 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 184 (2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the

issue differently, or the issues deserve further proceedings." *Garrett*, 211 F.3d at 1077; *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997), *cert. denied*, 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998).

[¶ 51] The Court believes that Medearis cannot satisfy the standard and make the requisite "substantial showing" with respect to any of his claims. None of them come even close to running afoul of the Constitution and for this reason, a COA should be denied.

### VIII.

[¶ 52] Based on the foregoing findings of fact and legal discussion and pursuant to § 636(b) and Rule 8(b) of the § 2255 Rules, it is hereby

[¶ 53] RECOMMENDED that Medearis' Motion Under § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, Docket No. 1, be denied in all respects. It is further

[¶ 54] RECOMMENDED that the Government's Motion to Dismiss, for failure to state a claim, Docket No. 11, be granted. It is further

[¶ 55] RECOMMENDED that the case be dismissed on the merits and with prejudice. It is further

[¶ 56] RECOMMENDED that a COA, if one is sought by Medearis, be denied as to all issues and claims raised in his § 2255 Motion.